**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Tammy J. R.,                                                                 Civ. No. 20-983 (BRT)

        Plaintiff,

v.                                                                                         **MEMORANDUM**
                                                                       **OPINION AND ORDER**

Kilolo Kijakazi,
Acting Commissioner of Social Security,

        Defendant.

---

Karl E. Osterhout, Osterhout Disability Law, LLC, and Edward C. Olson, Disability Attorneys of Minnesota, counsel for Plaintiff.

Kizuwanda Curtis, Esq., and Michael Moss, Esq., Social Security Administration, counsel for Defendant.

---

BECKY R. THORSON, United States Magistrate Judge.

      Pursuant to 42 U.S.C § 405(g), Plaintiff seeks judicial review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for disability insurance benefits and supplemental security income benefits. This matter is before the Court on the parties' cross-motions for summary judgement, in accordance with D. Minn. LR 7.2(c)(1). (Doc. Nos. 22, 26.) For the reasons stated below, the Court grants in part and denies in part Plaintiff's Motion for Summary Judgment (Doc. No. 22), denies Defendant's Motion for Summary Judgment (Doc. No. 26), and orders that the matter be remanded for further consideration consistent with this opinion.

## BACKGROUND

Plaintiff is a 51-year-old woman who applied for disability benefits pursuant to the Social Security Act, alleging disability based on a combination of physical and mental conditions including rheumatoid arthritis; neck, back, and wrist pain; unspecified issues with her right shoulder; left and right hips; right knee; and depression. (Tr. 292, 304–305.)[1] She alleges a disability onset date of August 1, 2010, but continued to work some until December 14, 2015. (Tr. 17.) Plaintiff completed the 11th grade and has worked a variety of jobs, including work as a cashier and nursing home assistant. (Tr. 295.)

Plaintiff filed an application for disability insurance benefits under Title II of the Social Security Act ("the Act") and supplemental security income ("SSI") under Title XVI of the Act on February 26, 2016.[2] (Tr. 90–91, 267–274.) The Social Security Administration ("SSA") denied her claim initially on July 20, 2016, and on reconsideration on November 23, 2016. (Tr. 155–159, 162–167.) Plaintiff timely requested a hearing, which was held before an Administrative Law Judge ("ALJ") on January 16, 2019. (Tr. 54–89.) The ALJ determined that Plaintiff was not disabled since her alleged disability onset date and issued a decision denying benefits on March 27, 2019. (Tr. 15–26.) Plaintiff's request for review was denied by the SSA Appeals Council

---

[1]   Throughout this Order, the abbreviation "Tr." is used to reference the Administrative Record. (Doc. No. 21.)

[2]   Plaintiff must establish that she was "disabled" as defined under the Act on or before September 30, 2018, her date last insured, to be eligible for disability insurance benefits. The date does not apply to SSI benefits where the burden is to demonstrate disability at any time between the date of her application and the date of the ALJ's decision.

on February 25, 2020, making the ALJ's decision the final decision of the Commissioner. (Tr. 1–6); 20 C.F.R. § 404.981.

In the decision, the ALJ proceeded through the five-step evaluation process provided in the social security regulations.[3] *See* 20 C.F.R. § 404.1520(a)(4). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 1, 2010, the alleged disability onset date.[4] (Tr. 17.) At step two, the ALJ determined that Plaintiff had the following medically determinable and severe impairments:

> fibromyalgia, chronic pain syndrome, bilateral degenerative joint disease, rheumatoid arthritis with hypermobility syndrome, low back, and neck pain secondary to degenerative disc disease of the cervical and lumbar spine, history of myocardial infarction, cardiomyopathy, major depressive disorder, anxiety disorder, alcoholism, opioid dependence, and obesity.

(Tr. 18.) At step three, the ALJ found that none of Plaintiff's impairments, or a combination thereof, met or medically equaled an impairment listed in 20 C.F.R. § Part 404, Subpart P, Appendix 1. (Tr. 19.)

---

[3] At step one, the ALJ must determine whether the claimant is engaging in substantial gainful activity. Step two requires the ALJ to determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." At step three, the ALJ determines whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of a listed impairment. Before step four, the ALJ determines the claimant's residual functional capacity ("RFC"). At step four, the ALJ determines whether the claimant has the RFC to perform the requirements of his past work. And at step five, the ALJ determines whether the claimant can do any other work considering his RFC, age, education, and work experience. *See* 20 C.F.R. § 404.1520(a)–(f).

[4] While Plaintiff did work after the alleged disability onset date, the ALJ found that "it [could] not be determined, by a preponderance of the evidence, that [Plaintiff] . . . had SGA income at any time in the last 15 years." (Tr. 17.) Therefore, the ALJ found that the clamant had "not engaged in SGA after the alleged onset date" despite working after that date. (*Id.*)

3

Before reaching step four, the ALJ found that Plaintiff had the residual functional capacity[5] ("RFC") to perform sedentary work with the following exceptions:

> [T]he individual may never climb ropes, ladders, or scaffolds, balance (as the term balancing is defined in the DOT and the SCO), kneel, crouch, or crawl; and may occasionally climb ramps and stairs, and stoop. The individual may never reach overhead and may only occasionally reach in all directions beyond 18 inches from the body, though other reaching activities are not restricted. The individual may have no exposure to unprotected heights or hazards. The individual is limited to simple routine tasks and may have occasional superficial contact with supervisors, coworkers, and members of the public with superficial being defined as rated no lower than an 8 on the selected characteristics of occupations' people rating.

(Tr. 23–24.) At step four, the ALJ determined that Plaintiff has no past relevant work. (Tr. 34.) At step five, after considering Plaintiff's age, education, work experience, RFC, and the testimony of a vocational expert, the ALJ determined that Plaintiff is able to perform jobs that exist in significant numbers in the national and state economies. (*Id*.) These jobs include occupations such as inspection and rework, semi-conductor inspection, and gauger. (Tr. 35.) The ALJ, therefore, determined that Plaintiff was "not disabled" under the Act for the entire period from Plaintiff's alleged disability onset date through the date of the decision. (*Id*.)

---

[5]  A claimant's RFC is "the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) (quotations omitted); *see also* 20 C.F.R. § 404.1545(a)(1) (stating that a claimant's "residual functional capacity is the most [she] can still do despite [her] limitations"). The ALJ is required to "determine the claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of [her] limitations." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (quotations omitted).

On April 22, 2020, Plaintiff timely filed the instant action seeking judicial review pursuant to 42 U.S.C. § 405(g). (Doc. No. 1.) On appeal, Plaintiff argues that the ALJ failed to properly weigh the medical opinion of her treating physician, and rejected limitations contained within that opinion without legally sufficient explanation. (Doc. No. 23, Pl.'s Mem. 1.) Plaintiff began treatment with her primary care physician, Dr. Darin Skaudis, M.D., in March 2014 and had regular appointments with him between April 2015 and August 2018. (Tr. 1606, 1352, 1369, 1405, 1419, 1433, 2659, 2782, 2825, 2871, 2887, 2899, 2981, 2931, 2951, 2965, 2979, 3484, 3544, 3566, 3609, 3625, 3651, 3665, 3727, 3756, 3887, 4034, 4036, 4362.) Dr. Skaudis opined in a medical source statement that Plaintiff's "shoulder immobilization" and "pain from hip [and] back" would limit her ability to perform a variety of work-related activities. (Tr. 1602–06.) Specifically, Dr. Skaudis opined that Plaintiff would only be able to stand or sit for "about 2 [hours]" each during an 8-hour workday, and may need to lie down every "4-6 [hours]." (*Id.*) The ALJ gave little weight to Dr. Skaudis's opinion, because it provided no "explanation whatsoever." (Tr. 30.) The ALJ gave great weight, however, to the opinion of an impartial medical expert, Dr. Andrew M. Steiner M.D., who opined on Plaintiffs work-related abilities at the administrative hearing. (Tr. 30, 77–88.) Dr. Steiner testified that the record "generally describes someone functioning at the sedentary level" but with an "inability to do any overhead work . . . [and] no ability to do kneeling or crawling or crouching." (Tr. 82.) He also noted that there would be periods of time after surgery when Plaintiff would be unable to perform sedentary work. (*Id.*) Dr. Steiner's opinion was given "great weight" because he is "an expert with program knowledge, . . .

5

[h]is opinion was supported by specific citations to the record and was subject to cross-examination." (Tr. 30.)

Plaintiff also argues that the RFC does not reflect her ability to perform work "on a sustained full-time basis" because it does not account for the "total limiting effects" of her multiple surgeries. (*Id.*) In addition, Plaintiff argues that the ALJ failed to consider whether Plaintiff was disabled within the meaning of the Act for any "closed period[s]" during the alleged disability period. (*Id.*)

## DISCUSSION

**I.    STANDARD OF REVIEW**

Congress has established the standards by which social security disability insurance benefits may be awarded. The SSA must find a claimant to be disabled if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's impairments must be "of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). Statements about pain or other symptoms "will not alone establish" disability; instead, "there must be objective medical evidence from an acceptable medical source that shows [the claimant has] a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 404.1529(a).

The claimant bears the burden of proving that she is entitled to disability insurance benefits under the Social Security Act. *See* 20 C.F.R. § 404.1512(a). Once the claimant has demonstrated that she cannot perform past work due to a disability, "the burden of proof shifts to the Commissioner to prove, first that the claimant retains the [RFC] to do other kinds of work, and second that other work exists in substantial numbers in the national economy that the claimant is able to do." *Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000).

The Court has the authority to review the Commissioner's final decision denying disability benefits. 42 U.S.C. § 405(g). If the Commissioner's decision is supported by substantial evidence in the record as a whole, it will be upheld. 42 U.S.C. § 405(g); *Kluesner* v. *Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). If the record as a whole supports the Commissioner's findings, the decision must be upheld, even if the record also supports the opposite conclusion. *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008). The Court may not substitute its own opinion for that of the ALJ's, even if the Court would have reached a conclusion different from that of the factfinder. *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993).

## II.   ANALYSIS

**A. The ALJ rejected the treating physician's opinion without good reasoning.**

In a medical source statement on a check-box form, Plaintiff's treating physician Dr. Skaudis opined that Plaintiff would experience a variety of work-related limitations as a result of her physical condition. (Tr. 1602–06.) On that form, Dr. Skaudis indicated that, in his opinion, Plaintiff would be able to stand and walk for a maximum of 2 hours per day; sit for a maximum of 2 hours per day; and would "sometimes need to lie down [for 4-6 hours] at unexpected intervals during a work shift[.]"[6] (Tr. 1603.) In the ALJ's RFC analysis, the ALJ gave "little weight" to Dr. Skaudis's opinion and instead relied on the opinion of an "impartial medical expert . . . [who] questioned [Plaintiff] at length," reviewed the medical evidence in the record, and testified at the administrative hearing. (Tr. 30.) Plaintiff argues that remand is required because the ALJ failed to state legally sufficient reasons for rejecting the opinion of her treating source. (Doc. No. 23.) This Court agrees that the ALJ's stated reasons for giving "little weight" to Plaintiff's treating source are legally insufficient such that remand is required.

Under the regulations applicable at the time of this decision, medical opinions provided by treating sources are entitled to special consideration. *See* 20 C.F.R. §§ 404.1527(c); 416.927(c)[7]. A treating source who "has or has had, an ongoing treatment

---

[6]   At the administrative hearing, a vocational expert testified that "an individual [who] was limited to standing and walking a total of two hours, and sitting a total of two hours in a workday" would not be able to engage in "full-time competitive employment." (Tr. 87.)

[7]   The regulations concerning the proper evaluation of medical opinion evidence have been amended for all claims submitted on or after March 27, 2017. Revisions to Rules Regarding the

8

relationship" with a claimant is "likely to be the medical professional[] most able to provide a detailed, longitudinal picture" of a claimant's impairment. 20 C.F.R. §§ 404.1527(a)(2), (c)(2); 20 C.F.R. §§ 416.927(a)(2), (c)(2). Therefore, medical opinions from these sources are generally entitled to the greatest weight, and are entitled to controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. §§ 404.1527(c)(2); 20 C.F.R. §§ 416.927(c)(2).

If controlling weight is not appropriate, treating source opinions are weighed according to the same framework as other medical opinions. *See* 20 C.F.R. §§ 404.1527(c); 20 C.F.R. §§ 416.927(c). Even where controlling weight is not appropriate "a treating physician's opinion is usually entitled to great weight." *Reece v. Colvin*, 834 F.3d 904, 909 (8th Cir. 2016). However, the "ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." *Id*. at 909 (quoting *Hamilton v. Astrue*, 518 F.3d 607, 610 (8th Cir. 2008)).

"Whether the ALJ gives the opinion of a treating physician great or little weight, the ALJ must give good reasons for doing so." *Walker v. Comm'r, Soc. Sec. Admin.*, 911 F.3d 550, 553 (8th Cir. 2018) (quoting *Reece*, 834 F.3d at 909); *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Failure to "explain . . . with some specificity" why a

Evaluation of Medical Evidence 82 FR 5844 (Jan. 18, 2017). Sections 404.1527 and 416.927 have been replaced by sections 404.1520c and 416.920c respectively for claims filed on or after March 27, 2017. *Id* at *5869, *5880. Plaintiff's claim was filed on February 26, 2016, so the old regulations apply. (Tr. 90–91.)

treating source's opinion was rejected is a reversible error. *Walker*, 911 F.3d at 553. In *Walker*, remand was appropriate where the ALJ "never mentioned the treatments or restrictions [that the treating source] recommended," "did not state . . . that [the treating source's] decision was inconsistent with the objective medical evidence" and "simply ignore[d] [the treating source's] opinion" in favor of a less restrictive opinion provided by a non-treating source. *Id*. at 554. A blanket statement that a treating source's opinion is "unreliable and unsupported by objective medical evidence" is not a good reason to reject that opinion where "the record shows that [the treating source's] opinion is supported by medically acceptable clinical data." *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000).

  Here, the ALJ determined that Plaintiff has the ability to perform sedentary work with some limitations after acknowledging Dr. Skaudis's medical source statement "restricting [Plaintiff] to a sub-sedentary level of exertion." (Tr. 23–24, 30.) The ALJ gave "little weight" to Dr. Skaudis's opinion but failed to provide good, specific reasons with citations to the record explaining why such weight was given. In fact, the ALJ includes almost no discussion about the reasons for giving little weight to Dr. Skaudis's opinion. (*Id*.) After noting that one of Dr. Skaudis's opinions was provided on a "check block" form, the ALJ states that "[he] gave little weight to [Dr. Skaudis's] opinions" without any further analysis. The discussion then turns to the reasons for giving "great weight" to the opinion of "an impartial medical expert." (*Id*.) Later, the ALJ states that Dr. Skaudis's opinions were given "less weight because they did not provide any explanation whatsoever." (*Id*.) The ALJ's reasoning with respect to the weight given to

10

Dr. Skaudis's opinion is cursory and not sufficiently specific to explain the weight given to a treating source's opinion.[8] The ALJ mentions that Dr. Skaudis's opinion is more limiting than the RFC but otherwise "fail[s] to discuss [the treating source's] contrary findings or opinion" at all. (Tr. 30); *Walker*, 911 F.3d at 554. The decision does not state that Dr. Skaudis's opinion is inconsistent with either the objective medical evidence or his own prior recommendations. *See Walker*, 911 F.3d at 554; *Reece*, 834 F.3d at 909. Nor does it state that the opinion of the non-treating source is "supported by superior medical evidence." *Reece*, 834 F.3d at 909.

Furthermore, the decision fails to discuss the factors that would apply to weighing a medical opinion if controlling weight is not appropriate. *See* 20 C.F.R §§ 404.1527(c) (1–6), 416.927(c) (1–6). Regulations require that more weight be given to the opinion of a medical provider who "has seen [a claimant] a number of times and long enough to have obtained a longitudinal picture of [that claimant's] impairment" than the opinion of a "nontreating source." 20 C.F.R §§ 404.1527(c)(2), 416.927(c)(2). Plaintiff began seeing Dr. Skaudis in March 2014, and had at least 29 appointments with him between April 2015 and August 2018. (Tr. 1606; 1352, 1369, 1405, 1419, 1433, 2659, 2782, 2825, 2871, 2887, 2899, 2981, 2931, 2951, 2965, 2979, 3484, 3544, 3566, 3609, 3625, 3651, 3665, 3727, 3756, 3887, 4034, 4036, 4362.) The ALJ fails to discuss the impact of this longitudinal treatment relationship in the weight analysis. Essentially the decision "simply ignores" Dr. Skaudis's opinion except to mention that it exists in the record.

---

[8]  The Court notes that the ALJ's reasoning in much of the rest of the opinion was very thorough.

11

The statement that "the opinions of . . . Dr. Skaudis get less weight because they did not provide any explanation whatsoever" is not a sufficient explanation and is not supported by substantial evidence in the record. (Tr. 30.) This sort of blanket statement is similar to the reasoning rejected in *Singh*. There, it was an error for the ALJ to "decline[] to accept portions of [a treating source's] functional capacities assessment because it [was] unreliable and unsupported by objective medical evidence" where "the record show[ed] that [the treating source's] opinion [was] supported by medically acceptable clinical data." *Singh*, 222 F.3d at 452. Here, Dr. Skaudis's medical source statement does provide an explanation for Plaintiff's limitations. He cites "pain from hip and back" as the reason that, in his opinion, Plaintiff would "sometimes need to lie down at unpredictable intervals." (Tr. 1603.) Dr. Skaudis also cites to "left shoulder surgery-immobilizing splint for weeks" and references "orthopedics post-op restrictions." (Tr. 1603–04.) Dr. Skaudis's opinions are also supported by medical evidence in the record, including extensive treatment records.[9]

Generally, a treating source's opinion is entitled to a great amount of weight. An ALJ is required to "give good reasons in [the] . . . decision for the weight [given to a] treating source's opinion, especially when the decision is not fully favorable. 20 C.F.R.

---

[9] On April 13, 2015, Dr. Skaudis, diagnosed chronic hip pain and found Plaintiff depressed on PHQ exam. (Tr. 1352.) Plaintiff also walked with a limp and moved slowly with difficulty rising from a chair. (Tr. 1356.) On June 26, 2015, Dr. Skaudis found leg edema and knee pain and advised Plaintiff to elevate her legs, restrict salt, take increased Lasix dose and three days of Prednisone, elevate legs above heart two to four times daily to relieve swelling. (Tr. 1377.) On October 12, 2015, Plaintiff could not walk more than 200 feet without hip pain. (Tr. 1405.) And on April 21, 2017, Dr. Skaudis prescribed Oxycodone for chronic pain and osteoarthritis in the left shoulder, with instructions to wean off its use on October 2, 2017. (Tr. 2975–76.)

§§ 404.1527(c)(2), 416.927(c)(2). Here, the ALJ's cursory weight analysis indicates that he did not consider all of the factors required under the applicable regulations. Even if all of the factors were properly considered, the ALJ failed to provide specific reasons for the weight given to Dr. Skaudis's medical opinion and failed to support the weight analysis with citations to any evidence in the case record. On remand, the ALJ is instructed to re-analyze the weight that Dr. Skaudis's opinion should be afforded consistent with this opinion and should reanalyze the RFC determination if necessary.

> **B. The ALJ did not properly consider whether Plaintiff qualified for a "closed period of disability" considering the "total limiting effects" of her multiple surgeries.**

Plaintiff challenges the decision on two other grounds. Plaintiff asserts that the ALJ failed to consider whether Plaintiff was disabled within the meaning of the Act for any "closed period[s]" during the alleged disability period. (Doc. No. 23.) And Plaintiff asserts that the RFC does not reflect her ability to perform work "on a sustained full-time basis" because it does not account for the "total limiting effects" of her multiple surgeries including periods of exacerbation following each surgery. (*Id*.) Because these two issues overlap, the Court addresses them together.

Plaintiff identifies a first "closed period of disability" beginning on August 1, 2010, and ending August 1, 2011, and a second period beginning January 3, 2017, and ending January 3, 2018. Plaintiff claims that she was disabled within the meaning of the

13

Act for both of those year-long periods due to hospitalizations, surgeries, and periods of exacerbation following each surgery. (Tr. 267–68.)[10, 11]

A claimant's RFC is "the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) (quotations omitted); *see also* 20 C.F.R. § 404.1545(a)(1) (stating that a claimant's "residual functional capacity is the most [she] can still do despite [her] limitations"). The ALJ is

---

[10]   Plaintiff first underwent surgery for hip arthroplasty on August 23, 2010. (Tr. 453.) Plaintiff then suffered a Methicillin-resistant Staphylococcus aureus ("MRSA") infection in late August 2010 that left her in the hospital for two weeks. (Tr. 435.) Plaintiff underwent a left hip Birmingham Hip Resurfacing debridement with component removal on September 24, 2010. (Tr.433.) Plaintiff was admitted to the hospital on October 24–25 for elevated pain, white blood count, and fatigue. (Tr. 804; 807.) Plaintiff then underwent an irrigation, debridement, and placement of drain tube in her left hip on October 27, 2010. (Tr. 458.) Plaintiff was also hospitalized from November 5, 2010–November 14, 2010 due to irrigation, hip pain, and debridement with Vancomycin impregnated methyl methacrylate block due to MRSA. (Tr. 414, 460, 462, 464.) Plaintiff again underwent a hip arthroplasty on her left hip on December 20, 2010. (Tr. 395.) Six months later, Plaintiff was hospitalized from June 20–23, 2011, due to a cardiomyopathy secondary to high dose epinephrine given for anaphylaxis. (Tr. 570.)

[11]   Plaintiff underwent an Esophagogastroduodenoscopy ("EGD") to check a pre-pyloric ulcer on January 3, 2017. (Tr. 2037.) A week later, Plaintiff was admitted to the emergency room for abdominal pain, vomiting, and diarrhea on January 11, 2017. (Tr. 2760.) Plaintiff was also admitted to the emergency room on February 7, 2017, due to stomach pain that revealed a hiatus hernia arterial diverticula. (Tr. 2780.) She underwent surgery for repair of a perforated ulcer and was hospitalized from May 17–21, 2017. (Tr. 2184–94.) Plaintiff was hospitalized again August 23–25, 2017, for a left total shoulder arthroplasty. (Tr. 2411–13.) And she was hospitalized from November 10–16, 2017, with hiatal hernia due to a significant amount of stomach herniation into the chest, which caused emergency surgery. (Tr. 2233, 2235, 3012.) Plaintiff was also hospitalized on November 19, 2017, with possible MRSA. (Tr. 3465.) Plaintiff was treated at the ER on November 22–23, 2017, for acute blood loss anemia and again on December 17–18, 2017, for dyspnea on exertion. (Tr. 3503, 3596.) On January 30, 2018, Plaintiff underwent a total left shoulder arthroplasty with subscapularis taken down. (Tr. 2423–25.) Plaintiff then received treatment for abdominal pain on March 27, 2018. (Tr. 3687.) Plaintiff was rushed to the ER with an anxiety/chemical dependency withdrawal on May 11, 2018. (Tr. 3837.) Plaintiff was hospitalized with abdominal pain and anemia from June 28–30, 2018. Plaintiff was also hospitalized from July 16–18, 2018, for lightheadedness, rectal bleeding, and a lower gastrointestinal bleed. (Tr. 4061,4067.)

required to "determine the claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of [her] limitations." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (quotations omitted). One consideration that impacts the RFC analysis is "the effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g., frequency of treatment, duration, disruption to routine, side effects of medication)." *Kim J. H. v. Saul*, No. 18-cv-2736 (MJD/TNL), 2020 WL 872308, at *9 (D. Minn. Jan. 28, 2020) (slip copy) (quoting SSR 96-8p, 1996 WL 374184, at *5). Evidence of "absenteeism from work resulting from a [claimant's] need for treatment" may support a finding that "such [claimant] is unable to perform work activity on a regular and continuing basis." *Id.* (quotations omitted).

In addition, disability benefits may be appropriately awarded either continuously or for a closed period. *See* 20 C.F.R. § 404.316. "Disability is not an 'all-or-nothing' proposition; a claimant who is not entitled to continuing benefits may well be eligible to receive benefits for a specific period of time." *Harris v. Sec'y of Dep. of Health and Human Servs.*, 959 F.2d 723, 724 (8th Cir. 1992). However, "to be eligible for a closed period of disability, [a plaintiff] must still meet the 12-month durational requirement." *Kim J. H.*, 2020 WL 872308, at *9 (citing 42 U.S.C. 423(d)(1)(A)). Failure to "consider whether [a claimant] [is] entitled to a closed period of benefits" may be reversible error, and at a minimum requires remand. *See Harris*, 959 F.2d at 724.

Plaintiff has identified two periods during which she alleges the inability to work because of frequent surgical procedures and hospitalizations. (Pl.'s Mem. 18–20.) Between August 1, 2010 and August 1, 2011, Plaintiff underwent five surgical procedures on her left hip. (*See* Tr. 453, 433, 458, 460–64, 395.) During this time, she was hospitalized for "at least 31 days." (Pl.'s Mem. 18.) Between January 2017 and July 2018, Plaintiff spent "at least 28 days in the hospital." (*Id.* at 19.) The ALJ determined that "Plaintiff would have [a] sub-sedentary RFC[] during short periods after individual procedures." (Tr. 30.)

The frequency of Plaintiff's operations at least raises the question of whether the periods of sub-sedentary functional capacity after each individual procedure overlap such that Plaintiff was unable to perform sedentary work for a continuous 12-month period. Given the record here, the ALJ was required to at least consider the proposed closed periods of disability. *See Shiplett v. Colvin*, No. 15-cv-55, 2016 WL 6783270, at *13 (W.D. Va. Nov. 11, 2016) (stating that an "ALJ must evaluate whether a claimant has shown that he or she was disabled for any consecutive twelve-month period between his or her onset date and the date of the hearing" and that failure to address the issue when the record suggested that closed period award may be warranted was an error). Because it is not evident from the ALJ's decision that such consideration was given, remand is required for the ALJ to consider the proposed closed periods (and any other potential 12-month closed periods) and to give reasoning for either finding a closed period of disability or for not finding a closed period of disability. *See Sandra Lee M. v. Comm'r of Soc. Sec.*, No. 20-cv-34 (EAW), 2021 WL 2044415, at *5 (W.D.N.Y. May 24, 2021)

16

(remanding for failure to consider "whether Plaintiff was totally disabled for a closed period of at least 12 months while [s]he recuperated from her hospitalizations and surgery"). The ALJ is instructed to consider "all of the relevant evidence in the case record" including the "effects of treatment" such as "limitations or restrictions imposed by the mechanics of treatment." SSR 96-8p, 1996 WL 374184, at *5.

### III.  Conclusion

For the reasons stated, remand is required. On remand, the ALJ shall properly weigh all medical opinions, including but not limited to the medical opinions of Plaintiff's treating physician, Dr. Skaudis, as more fully set forth in this opinion. The ALJ is also instructed to consider whether Plaintiff was disabled under the Act for any continuous 12-month period.

### ORDER

Based on the foregoing, and all the files, records, and submissions herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Summary Judgment (Doc. No. 22) is **GRANTED**;

2. Defendant's Motion for Summary Judgment (Doc. No. 26) is **DENIED**;

3. This matter is remanded to the Commissioner for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence four), consistent with this Memorandum Order and Opinion.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: September 20, 2021            *s/ Becky R. Thorson*
                                    BECKY R. THORSON
                                    United States Magistrate Judge